# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**CABELL COUNTY COMMISSION,**
**Employer Below, Petitioner**

**v.) No. 26-ICA-34**          (JCN: 2024006162)

**D.E.,**
**Claimant Below, Respondent**

**FILED**
**August 6, 2026**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Cabell County Commission ("the Commission") appeals the December 29, 2025, order of the Workers' Compensation Board of Review ("Board"). Respondent D.E. timely filed a response.[1] The Commission did not file a reply. The issue on appeal is whether the Board erred in reversing the claim administrator's order and granting the request to add severe major depressive disorder, trauma and stressor-related disorder, and generalized anxiety disorder ("GAD") with panic attacks as compensable conditions in the claim.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds that there is error in the Board's decision but no substantial question of law. For the reasons set forth below, a memorandum decision vacating and remanding for further proceedings is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

Prior to the compensable injury in this claim, D.E. saw his primary care provider, Kevin McCann, M.D., at Cabell Huntington Hospital on November 13, 2013. Among the active conditions Dr. McCann included in his report were anxiety, attention deficit hyperactivity disorder, and bipolar II disorder (inadequately controlled). D.E. followed up with Dr. McCann on May 29, 2014, and on December 28, 2015. At both visits, Dr. McCann included anxiety, attention deficit hyperactivity disorder, and bipolar II disorder among D.E.'s active problems.

D.E. followed up with Dr. McCann on August 28, 2023. Dr. McCann included affective disorder in D.E.'s problem list, which he described as mild symptoms, restless

---

[1] The Commission is represented by James W. Heslep, Esq. D.E. is represented by G. Patrick Jacobs, Esq.

1

sleep, low energy, mild concentration problems, and reduced appetite. Dr. McCann noted that D.E. did not have periods of overly high energy and said he would continue monitoring D.E. Dr. McCann assessed hypertension, syncope, and headache disorder.

D.E. completed an Employees' and Physicians' Report of Occupational Injury or Disease dated September 30, 2023. He alleged an injury to his back and left leg on September 23, 2023, while lifting a large patient from the ground. Per the physician's section, D.E. injured his lower back and left leg and foot as a direct result of an occupational injury. Medical personnel at Cabell Huntington Hospital indicated that this occupational injury did not aggravate a prior injury/disease and that D.E. could return to work at full duty.

On January 27, 2025, D.E. began treatment at Marshall Psychiatry and Behavioral Medicine as a new patient. D.E. reported that he was aggravated, annoyed, anxious, and stressed. D.E. reported that when he was fourteen or fifteen, he received inpatient treatment for one and a half weeks due to hallucinations, but said that he had not seen a psychiatrist since childhood. Further, D.E. also stated that his father's frequent hospital stays at the end of his life were traumatic to him and that he faced traumatic situations in his job as an EMS provider. D.E. indicated that his occupational injury was an L5-S1 bulging disc and radiculopathy. Brady Tickle, D.O., and Angela Thorp, M.D., assessed major depressive disorder, recurrent and severe without psychotic behavior; GAD with panic attacks; and trauma and stressor-related disorder. Dr. Tickle prescribed Zoloft.

On February 10, 2025, D.E. presented to Marshall Psychiatry and Behavioral Medicine for psychotherapy with Jamie Humphrey, Psy.D., to address depression and anger. D.E. reported that he had always struggled with irritability, but indicated that it worsened after the compensable injury. D.E. also indicated that he previously attempted therapy around 2006, when his father passed away, and that he worked on his anger in the past. D.E. said that after working in EMS for twelve years, his injury ultimately forced him to end his career early. D.E. indicated that his irritability is triggered by many things, sometimes even as little as the way someone moves. Dr. Humphrey assessed major depressive disorder, recurrent and severe, without psychotic behavior. D.E. returned to psychotherapy the following week on February 17, 2025. He reported frustrations with financial stressors, including his wife's loss of a job, and continued problems with workers' compensation. D.E. also said that he had been sleeping more than usual. Dr. Humphrey assessed major recurrent depressive disorder, severe without psychotic behavior, and noted that D.E. had a depressed mood most of the day, nearly every day.

On April 24, 2025, D.E. followed up with Dr. Tickle and Meredith Bentley, D.O., at Marshall Psychiatry and Behavioral Medicine. D.E. reported that his mood had been very disconnected, but that Zoloft had helped him manage stress. He had not slept in the past two days, leading to extreme fatigue. Dr. Tickle and Dr. Bentley assessed major

depressive disorder, recurrent and severe, without psychotic behavior, GAD with panic attacks, and trauma and stressor-related disorder.

On April 28, 2025, D.E. followed up with Dr. Humphrey for psychotherapy. Dr. Humphrey assessed recurrent major depressive disorder, severe without psychotic behavior. She described D.E.'s symptoms as depressed mood most of the day, nearly every day, lack of motivation, appetite changes, insomnia, psychomotor agitation, feelings of worthlessness, difficulty concentrating, anhedonia, and irritability. Dr. Humphrey recommended that D.E. return to psychotherapy in two weeks.

D.E. gave a deposition on May 1, 2025, and testified that he was employed by Cabell County EMS, and that he was lifting a large patient while at work when he began to feel pain in his back. D.E. estimated that the patient weighed between four hundred and four hundred and fifty pounds. His current symptoms included pain in the lower back radiating to the left side, down the back of the left leg, and to the top of the foot. D.E. indicated that he had numbness on the top of the left foot and the front of the left leg. He said that he was prescribed a walker, and he had balance issues and sleep interruptions due to the pain. D.E. stated that he had issues transitioning from sitting to standing and vice versa. He testified that his job involved heavy lifting, pushing, pulling, and hard work every day. D.E. said that his mind was running non-stop between everything piling up, pain, and being unable to work. He had motivation issues and an inability to concentrate. D.E. attributed these problems to the compensable injury.

On May 12, 2025, D.E. followed up with Dr. Humphrey for psychotherapy. Dr. Humphrey assessed recurrent major depressive disorder, severe, without psychotic behavior. Dr. Humphrey saw D.E. again on May 28, 2025, and assessed recurrent major depressive disorder, severe, without psychotic behavior; GAD with panic attacks; and posttraumatic stress disorder.

On May 29, 2025, Dr. Tickle completed a Diagnosis Update form and requested that major depressive disorder, severe, GAD without panic attacks, and trauma and stressor-related disorder be added as compensable conditions in the claim. Dr. Tickle explained that D.E. has a diagnosis of trauma and stressor-related disorder, and as a result, he has nightmares related to his experiences working as an EMT. Also on May 29, 2025, D.E. was treated by Dr. Tickle and Joseph Newman, M.D., at Marshall Psychiatry and Behavioral Medicine. The assessment included GAD with panic attacks, recurrent, major depressive disorder, severe, without psychotic behavior, and trauma and stressor-related disorder.

By order dated June 27, 2025, the claim administrator denied the request to add severe major depressive disorder, trauma and stress-related disorder, and GAD with panic attacks as compensable conditions in the claim. The claim administrator concluded that

these conditions were not causally related to the September 23, 2023, occupational injury. D.E. protested this order to the Board.

On September 30, 2025, D.E. gave an additional deposition and testified that he sought psychiatric treatment after the compensable injury because he was having depression and anxiety issues. D.E. reported that he received psychiatric treatment from Dr. Tickle and saw a therapist for counseling. D.E. was prescribed Zoloft, Minipress, and Vistaril, but had not taken any of these medications in the last five years. When D.E. was a child, he was diagnosed with anxiety, attention deficit disorder, and was hospitalized for auditory verbal hallucinations. D.E. attributed his current psychiatric condition to the compensable injury and being off work. He said that he does not feel useful to his family, feels helpless, has motivational problems, periods of sadness, crying spells, and sleep interruptions. D.E. testified that he has nightmares every night related to former calls as an EMT. According to D.E., the memories that trigger intrusive thoughts leading to panic attacks occurred prior to his injury and include scenes involving multiple shootings. His panic attack symptoms were chest tightness, dread, and sickness in his stomach. Further, D.E. said that he did not recall receiving any psychiatric or psychological treatment from 2008 until the recent need for treatment.

By order dated December 29, 2025, the Board reversed the claim administrator's order and held the claim compensable for severe major depressive disorder, trauma and stressor related disorder, and GAD with panic attacks. The Board found that the evidence does not establish that the claimant was treated for severe major depressive disorder, trauma and stressor-related disorder, and/or GAD with panic attacks from at least December 28, 2015, until after the compensable injury. Further, the Board found that these conditions are causally related to the compensable injury. It is from this order that the Commission now appeals.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;

4

(5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

On appeal, the Commission argues that there is not sufficient evidence from a qualified provider to make a psychiatric diagnosis or statement as to compensability of the diagnosis, and that it is not clear that D.E. has undergone the requisite testing for these diagnoses. Further, the Commission argues that D.E. had preexisting psychiatric conditions for which he was treated as a teenager and into adulthood. We agree that there is insufficient evidence from a psychiatrist regarding the etiology of D.E.'s psychiatric conditions to establish compensability.

West Virginia Code of State Rules § 85-20-12.4 ("Rule 20 § 12.4") outlines the procedures required to add psychiatric conditions to a workers' compensation claim and provides, in pertinent part, that "[the] psychiatrist ... shall examine the injured worker to determine 1) if a psychiatric problem exists; 2) whether the problem is directly related to the compensable condition; and 3) if so, the specific facts, circumstances, and other authorities relied upon to determine the causal relationship." In *Hale v. W. Va. Off. of Ins. Comm'r*, 228 W. Va. 781, 724 S.E.2d 752 (2012), the Supreme Court of Appeals of West Virginia ("SCAWV") held that pursuant to Rule 20 § 12.4, before a psychiatric condition may be added to a claim, a three-step process must be followed. The second step of that process requires that a psychiatrist examine the worker and make a detailed report, which is to aid the claim administrator in determining whether a psychiatric condition should be added to the claim.

Further, we note that pursuant to West Virginia Code § 23-4-1f(a), a psychiatric injury or disease is not compensable if it is "solely caused by nonphysical means and which did not result in any physical injury or disease to the person claiming benefits." This provision clarifies that "so-called mental-mental claims are not compensable[.]"

We note that more recently, in some cases, the SCAWV has not required strict compliance with the criteria set forth in *Hale* and Rule 20 § 12.4. For instance, in *Genesis Healthcare Corp. v. D.N.*, No. 21-0500, 2023 WL 355658, at *5 (W. Va. Jan. 23, 2023) (memorandum decision), the Court found that, even though there was no single detailed psychiatric report, the treating psychiatrist "provided the required information to the claims administrator, including the conditions diagnosed, the relationship to the compensable injury, the proposed treatment, and whether [the claimant] had returned to work."

Upon review, we conclude that none of the treatment providers of record have outlined a clear relationship between the requested psychiatric conditions and the

compensable back injury as required by Rule 20 § 12.4. Although the reports of Drs. Humphrey, Tickle, and Thorp reference these psychiatric conditions, there are conflicting indications regarding the etiology of these conditions. Some evidence indicates that at least a few of D.E.'s psychiatric conditions may not stem from his compensable back injury, but instead from the general nature of his job as an EMT and from other financial stressors. Further, there is additional medical evidence that D.E.'s pre-existing psychiatric conditions were active in his adulthood, such as Dr. McCann's notes dated December 28, 2015, and August 28, 2023, which mentioned a diagnosis of affective disorder.

The present case is distinguished from *Genesis* because here, there is insufficient evidence from a qualified psychiatrist to establish causation between the compensable injury and the applicable psychiatric diagnoses.[2] Further, in *E.B. v. Alliance Coal, LLC*, No. 23-409, 2025 WL 1203177, at *2 (W. Va. Apr. 25, 2025) (memorandum decision), the SCAWV vacated and remanded the case so that the claimant could obtain a proper evaluation report from a qualified psychiatrist. The present case is more complex than *Genesis* or *E.B.* due to the possibility that some or all of D.E.'s psychiatric conditions stem from the general nature of his work as an EMT, causing him to be exposed to traumatic situations. Thus, in accordance with the SCAWV's holding in *E.B.*, we vacate the Board's order and remand this case to the Board for further proceedings so that D.E. can submit a psychiatric report from a qualified psychiatrist in compliance with Rule 20 § 12.4.[3]

Accordingly, we vacate and remand this case to the Board for further proceedings consistent with this decision.

Vacated and Remanded.

**ISSUED:** August 6, 2026

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge S. Ryan White

---

[2] We note that in *Genesis*, the Board determined that the medical evidence of record provided all of the required information to establish compensability. Here, the Board did not make such a finding, and it is apparent that no treatment provider has outlined causation between the requested psychiatric conditions and the compensable back injury.

[3] We note that the Commission should also be allowed to submit an additional psychiatric report if it chooses to have D.E. examined.